JUDGE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR17-5116 BHS |
| Plaintiff, | ) | |
| v. | ) | DEFENDANT'S MOTION IN SUPPORT OF DIRECTED VERDICT OF ACQUITTAL |
| CHARLES ANDREW STOCKER, | ) | |
| Defendant. | ) | |

**ARGUMENT**

Charles Stocker respectfully moves the Court pursuant to Fed. R. Crim. P. 29(a) for a judgment of acquittal based on the Government's failure to offer evidence sufficient to sustain a conviction for aiding and abetting a conspiracy between Dan Bowman and Lindsy Spargo.

In particular, the Government's evidence is insufficient as a matter of law to support two elements of the charged offense: that Mr. Stocker knew of the Bowman/Spargo conspiracy at the time that he committed the acts that allegedly helped the conspiracy, and (even if he knew of the conspiracy) that he acted with the specific intent of furthering it.

**A.   There is No Evidence that Stocker Knew of the Conspiracy**

Taking the evidence in the light most favorable to the Government, its evidence related to the knowledge element is non-existent. Mr. Bowman has testified that he never discussed his criminal dealings with Mr. Stocker, and certainly never discussed

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
**(253) 593-6710**

with him the fact that he engaged in drug dealing with Ms. Spargo. Among many relevant statements by Bowman about this issue during his testimony, he also stated that he was careful not to disclose his drug activities to Mr. Stocker because he was "law enforcement"; that he concealed his drug usage and sales during furloughs from Stocker; and that Ms. Spargo had told him to be careful about not revealing their activities to Stocker. Mr. Bowman also testified, among other reiterations of the same fact, that he got "bits" of information from Stocker only by "weaseling" them from him, and that he got "tired of telling" the Government about Stocker's lack of involvement in the alleged conspiracy.

As for Ms. Spargo, there is no evidence from her that she discussed or disclosed any of her criminal activities during her minimal contacts with Mr. Stocker, let alone that she was working with Bowman as part of a conspiracy. Indeed, the one interaction between her and Stocker the Government has focused on involves an alleged incident at the Aberdeen courthouse during which Stocker told Spargo that DTF was listening to Bowman's calls to her. While Ms. Spargo has testified that she found this information potentially useful, she also testified that she said little or nothing in response to Mr. Stocker's "tip," and certainly did nothing to reveal that she was anything other than Bowman's girlfriend.

Moreover, there is no other evidence that might even arguably be sufficient to establish Mr. Stocker's knowledge of the conspiracy. For example, there are no statements by Stocker that might establish knowledge, and in fact the Government's evidence and recorded interview of Stocker show that he knew Spargo only as Bowman's girlfriend. Indeed, a remarkable fact about Mr. Stocker's interview with law enforcement on July 20 is that Agent Schroff avoided asking any questions relevant to the knowledge element, including whether Mr. Stocker ever actually knew about it. Ms. Spargo is not even mentioned during the interview except as Bowman's

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

"girlfriend." Likewise, there are no recordings, text messages, or other witness testimony that establish such knowledge.

There is also no circumstantial or attenuated evidence that the Government may cite as proof that Mr. Stocker knew about the conspiracy. Ms. Spargo was never in contact with Stocker as an inmate at the Aberdeen jail and he had no indirect knowledge of her criminal history or drug activities. For example, there is no evidence that anyone from DTF alerted Stocker about its investigation of Spargo (even inadvertently), and DTF was in fact making successful undercover buys from her during the same time period that Stocker was supposedly leaking information that aided the conspiracy.

It is also relevant to the lack of proof of knowledge that both Spargo and Bowman have testified that they never gave any favors or benefits to Stocker, for any reason, and the utter lack of evidence that Stocker had anything to do with drugs at any point in time (in addition to Bowman's testimony that Stocker would have nothing to do with drugs, because of his son's addiction issues).

Instead, the Government is likely to argue that Stocker "must have known" that *Bowman* was involved in criminal activity during the relevant time period. But even if that is true, the Government cannot stretch that knowledge to include knowledge of Ms. Spargo's criminal activity, let alone the existence of a conspiracy between Spargo and Bowman. Moreover, as the Court is fully aware, the Government has not charged Stocker with aiding and abetting Bowman apart from the conspiracy (a charge it could have pursued, as it originally did with Joshua McManus, without adding the additional knowledge required by the conspiracy element).

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 3

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

**B.     There is no Evidence that Mr. Stocker had the Specific Intent to Further the Bowman/Spargo Conspiracy**.

Plainly, without sufficient evidence to prove that Mr. Stocker even knew of the conspiracy, the Government is hard pressed to explain how he could have acted with the intent to further it. Setting that hurdle aside, all of the evidence related to Stocker's intentions shows that he had no intent to further a conspiracy. The Government itself elicited from Mr. Bowman that his relationship with Stocker was based on friendship and that Stocker would have nothing to do with drugs.

Bowman also testified that he is a "good actor" and took advantage of his relationship with Stocker to "weasel" bits of information from him. There would be no need for Bowman to act as a friend to Stocker or manipulate him for information if Stocker knew of and intended to help the conspiracy. This point is perhaps best illustrated by the so-called "heart attack" furlough, where Bowman admitted he lied to Stocker about his reasons for wanting a furlough (to get married) to conceal his intention to use or deal drugs while away from jail.[1] Bowman further testified that any offer by Stocker to hold money was intended to help Bowman when he got out of jail or for Bowman's child; that he never discussed drug dealing or holding drugs with Stocker; and that he told the FBI that Stocker would not knowingly take drugs from him.

Given these facts, and the lack of other relevant evidence, there is no evidence (let alone sufficient evidence) to support the specific intent element of the crime charged. We reiterate, as discussed in detail in Mr. Stocker's Reply re Deliberate Ignorance Instruction at 4-6 (dkt. 172), that the Government's contention – that the specific intent element is no more than a requirement of knowledge of the conspiracy

---

[1] This summary of the evidence does not even take into account the fact that Bowman was actually sick with a lung infection and high blood pressure when he went on furlough, and it was his doctor who spoke to Capt. Johnson in order to get the furlough approved.

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

and knowledge that one's actions will aid the conspiracy – is both without support in Ninth Circuit and directly contrary to that law, which requires specific intent to aid and abet the conspiracy.

### C. A Directed Verdict is Particularly Appropriate in This Case Because the Jury May Still Convict Mr. Stocker Based on the Rule 404(b) Evidence.

The defense understands that the Court may be reluctant to deprive the jury of an opportunity to decide this case. However, because of the heightened risk that Mr. Stocker may be wrongly convicted because of the Government's focus on events that occurred after the Bowman/Spargo conspiracy ended, this case is particularly appropriate for a judgment of acquittal.

As anticipated, the Government has devoted a disproportionate amount of its case to events and testimony that are not evidence of the charged offense. Half or more of the trial has been consumed by the 404(b) "dirty trick" evidence, consistent with concerns the defense raised pre-trial. *See* dkt. 117 (Defendant's Trial Brief) at 32-33. When that "other acts" evidence is stripped away, there is a paucity of evidence related to the actual charge. A reassessment by the Court at this juncture of the probative value of the 404(b) evidence versus its prejudice effect may well lead it to conclude that the charged offense has been overshadowed by uncharged conduct, and there is a significant risk that the jury will be unduly influenced by those allegations:

> The sufficiency of the evidence warrants particular scrutiny when the evidence strongly indicates that a defendant is guilty of a crime other than that for which he was convicted, but for which he was not charged. Under such circumstances, a trier of fact, particularly a jury, may convict a defendant of a crime for which there is insufficient evidence to vindicate its judgment that the defendant is blameworthy. Compelling evidence that a defendant is guilty of some crime is not, however, a cognizable reason for finding a defendant guilty of another crime.

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 5

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

*United States v. Salamanca*, 990 F.2d 629, 638 (D.C. Cir. 1993) (reversing conviction). While the defense does not believe that there is evidence "strongly indicating" that Mr. Stocker is guilty of any crime, given the dearth of evidence to support the sole remaining charge and the undue focus on potential uncharged crimes the risk of a wrongful conviction in this case is just as pronounced as it was in *Salamanca*.

DATED this 12th day of March, 2018.

                                          Respectfully submitted,

                                          s/ *Colin Fieman*
                                          s/ *John Carpenter*
                                          Assistant Federal Public Defenders
                                          Attorneys for Charles Andrew Stocker

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

s/ *Amy Strickling*
Paralegal

DEFENDANT'S MOTION IN SUPPORT OF
REDIRECTED VERDICT OF ACQUITTAL
(*United States v. Stocker*, CR17-5116 BHS) - 7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**